Good morning, judges. Dylan Kosla for behalf of Appellant Gholwan Mechammil. Would you pull the microphone up a little closer to you? Speak a tiny bit louder so we can all hear you. OK. Can you hear me now? Yes. OK. And we were not sure, Judge Gould, from the cameras. If I look this way, am I giving you eye contact or am I looking at the wrong camera? No, we're looking right in the – I'm looking you right in the eye right now. OK, good. I just wanted to be sure because I realize people were turning towards one camera but might be giving you the cheek, so. In any event, if it's all right with the panel, I'd like to reserve five minutes for rebuttal. So Mr. Mechammil is currently facing over $1 million of a cloud on his property that he purchased for $1.6 million. The city, in its answering brief, has five times used a statement in the pleadings that we submitted before this court that's going on before the state court and pointed out that Mr. Fowler said he disposed of the property at a lower purchase price. Now, they don't connect it to a legal analysis, but the insinuation by the way they say it is, A, either Mr. Mechammil knew of these fines or, two, that he, quote, bought with the taking built in, which is by analogy some of the case law that doesn't apply to this situation, which I will explain. But I want to start with that out of the gate, even though it wasn't something litigated in this case. Yeah, but why do we care what he disposed of it for? Because it relates to why we raised abstention and why there is this going back and forth between how the judgments are evolving. Tell us what would be helpful in your abstention argument is to know what's going on in the state court. What are your claims in the state court litigation? Well, we don't know. Where does it stand? Right. So the former owner has an action there. Right. Mr. Mechammil does. And he's protesting the fines that were imposed on him. That's exactly right. The fines have nothing to do with you other than whether or not they can be assessed against the property. That's right, except the problem is, which is the Palazzolo case, which is what the Supreme Court said, is you have an evolving standing problem here, meaning the assessments were assessed before Mr. Mechammil, the first one. And then the second one, right, was put over on the property after Mr. Mechammil purchased the property. I want to ask you about those a second, but stick with the state litigation. Obviously, if the fines are thrown out, then the assessments go away, too. Correct? Well, that's the problem here. Mr. Faiwur did put a footnote in the case, and we cited it, asking for that. But they didn't join the Riverside County Tax Collector, right? And the CCA, the Court of Appeals, said it does not look like you have standing to go that far because he wasn't a sufficient stakeholder. Right. So he only has the ability to challenge the fines. Right. And what they're doing. So I guess let me cut to the chase. What are we abstaining for? What are we waiting for, in your view? I don't think it's a younger problem at this point, which is we – Well, what are we waiting for? What ruling from the state court would help us dispose of this case? You don't have one now because, first of all, they didn't invalidate the fines. They just said we're not going after him because we've been paid already. So they're still on the books, and there's nothing to say Mr. Meckermill's not on the books. So let's get back to your case. I want to understand procedurally how this works because I think, for me, it was confusing. The city imposed basically two assessments on the property. Correct. The assessments themselves are not a lien, are they? They are treated as a lien, but they are not. So they just go on to your property tax, if you will. That's right. And if your property tax is not paid, then a lien can be imposed. That's right. And that's why they have that exception in the state codes for the costs that say until it's delinquent, a subsequent purchase is not on the hook because you wouldn't see it in a title search. Okay. So what I'm trying to figure out is were both of these assessments on tax bills that your client received? Yes. And did your client have the ability to protest those taxes? No. Why not? Because the first one, as the district court said, was assessed when he was not the owner, three months before it closed. It may have been assessed. My question is you got three months before he bought it, it was assessed, but he received a tax bill. Months later. Months later with it on it. Why couldn't he protest that tax bill? Well, he did when they sent him the invoice for the second one, which was shortly after that. What he did was pay the actual taxes he owed and didn't pay that. No, but I'm asking a different question. Right. There is a procedure under state law to protest a tax bill. You get a property tax bill and you can go file a protest. Right. Your client got a tax bill that included this assessment. Could he have protested that assessment in the process under which you protest tax bills? Well, no one has, you know, explained what could be done with that. Well, I'm asking. I don't know. I mean, you're talking about. State law says you may protest your tax bill and this is part of your tax bill. Why can't you protest it? Well, what I'm asking you is when you say state law says that, is there a time clock on it? If he gets it and he goes, oh, well, this doesn't refer to me, I didn't. I'm not asking about his mental process. I'm just saying he got a tax bill that was too large in his view. Right, gotcha. It included an assessment for penalties. Gotcha, right. And there's a protest procedure for tax bills. Why couldn't he have then gone to the whatever administrative agency where one protests a tax bill and say this shouldn't be imposed on me? It was done wrong for all the reasons you raise in your brief here. Right. Why couldn't he have done that? I, you know, there's a question here because the California Constitution says a fine is not a tax. And that's the other problem here. No, that's a separate argument, which is that they couldn't impose it in the first place. Right. I'm just wondering what authority he would try to be guessing because you're talking about a lay person here. And I'm trying to figure out, you know, what. You're right. The reason I'm asking is you raise a due process claim. You say this was imposed and we never had the ability to fight about it. And I'm saying why wasn't the time when you received the tax bill the appropriate time to go fight about it? Well, I would say that you're right in terms of. But the question is how quickly should he have done that when a few months later he did try to write a letter and say, wait a minute, I'm not the record owner. And they said, so what? They didn't answer him and they just imposed a second one. You know what happens to letters that don't relate to a process? When there's a process established by the law and you send the letter to the wrong office, you don't follow the procedure in the law, you know what happens to those letters. They go in the circular file. There's an office set up to get the protest, to get the letter, and you don't follow that. How is that going to help? I mean, that doesn't meet, that doesn't solve your problem. Well, I mean, I think in looking at who he sent the letter to, right, it was the city manager, it was the people that he thought would be the people that he should reach. But let me, I mean. Because he made some rational decisions as a layperson doesn't mean he didn't forego some remedy he should have undertaken. I do understand what you're saying, and I think this relates to when you have two governors vetoing this kind of action and they say we're worried that there's not going to be due process, that this will accrue. Because, you know, even if you look at Wikipedia, they say ad valorem taxes are the worst and most difficult. If you don't appear at the hearing, the odds of you undoing them are incredibly difficult. Let's go back. Judge Gould. If I may interject, I'd like to get your comments on a few issues of interest to me. But on this one you were responding to Judge Rustanian, I'll say it may be that if we find, in our view, that there is a procedure under which your client could have challenged a tax assessment and did not avail himself of that, that might scuttle your procedural due process claim, arguably, although I haven't decided. But it wouldn't affect your takings claim and your substantive due process. So procedural due process might be impaired, a claim on that, by not having taken an appeal procedure of some sort. But you still have your issues on substantive due process and takings, which the district court on those claims dismissed them, I think, on the notion that they had not been exhausted. And that seems, if I'm right, an incorrect legal position. I don't see why your client would have to exhaust those issues in state court. And also your client sued state court and was removed to federal court. So I'd like you to just understand that we might send an order for supplemental briefing on this issue that you started off being occupied with. But on the other issues, I would appreciate if I could hear today, do we have to vacate the ruling on those points on exhaustion and send those back? I appreciate the question. The district judge did actually say the city was incorrect, that exhaustion does not apply in the 1983 context. And so he used Williamson ripeness for the taking claim to dispose of it. So I think that covers that area. As far as correctly use Williamson ripeness to dispose of it. I think for the takings, the law does give you some discretion, but it's generally an applicable rule and it would apply here. I think it dovetails, though, that are cross-referenced in the city's brief and bringing them forward in terms of the Palazzo case that I mentioned, which is in the takings context but talks about ripening claims from one owner to the next and the difficulty of challenging this type of conduct. My difficulty in answering the question, and we can certainly do supplemental briefing in terms of the first tax bill he received. That's a fair question. But the recording statutes in California and talking about how you really give accurate notice about what is going on and if that is not okay and your hook is to do that sufficiently quickly and in a manner that is illegal in the inception and done in a way that is not recordable and has no statute to allow you to record a fine, it would seem that there are not severable issues that the notice and issue, they kind of go on. Let me interrupt you for a second to ask you a question on that, and I know you want to save some time for rebuttal. Let's assume that we accept your argument that California, your statutory argument, that California statutes do not allow these fines to be assessed against the property. What remains, and we rule in your favor or the district court rules in your favor on that, do you have any other claims that remain? Well, I think the excessive fines, which was raised all throughout. Well, but the fine, you never paid the fine. You're appealing the fine, if you will. So what other claims remain? That's what Judge Gould was asking. Oh, I see what you're saying. In a different way. Yeah, we put that in our brief in terms of claims properly pled versus claims that were late pled beyond the TAC. No, I'm not worried about when they were pled. I'm just trying to figure out. Let's assume, just for your purposes, that you convince us that the statute, California statutes do not allow these fines to be assessed against the property. Maybe they can be assessed against the prior owner. That's what his litigation is about. What do we do with this case? Just tell me what the rest, tell me what, our order, I'm writing our order. Our order says you win on your statutory argument. These assessments were improperly imposed against your property. They go away. We issue a decoratory judgment that they should be. What does the rest of the order say? If you're talking about keeping it in federal court, which, you know, would be, I think, ideal. It's in front of a federal district judge. Okay. What do we tell that federal district judge to do with the rest of the case? Is it moot? Do we send it back for further hearings? What do we do? I think that under Coburn, under the due process, it would be, or under the, excuse me, under the state claim where Coburn says that if the city or county cannot come up with a reason why, or a statutory or treatise, or an explanation for why there is not authority to do this, or to support authority to do these fines, then it should be, it should be converted to a summary judgment or allow them to go to summary judgment and grant relief and have the cloud removed. Because he has a German Riverside. What if we, in effect, say the cloud should be removed? Right. Is there anything else that your client wants? I don't know. I can certainly do something. I don't know either. I can check with him. Why don't you sit down and think about it? Let me ask you this question. I mean, it would be relief. What do you want us to do with your 1983 claim? We would love for you to say that it should be, you know, granted relief in terms of either Coburn or the other authority that's been applied. What relief do you want? To have the cloud removed. Okay. And other than seeking to have the cloud removed on this property, do you seek any other relief in this case? Well, I think if you agree. Yes or no? Yes. What is it? Punitive damages. That's the only other relief you seek? I can, I don't want to answer that without checking with. I don't know what you claimed in your complaint. Well, I have all the claims here. I'm just saying as far as punitive damages, what type of relief are you asking? Just pure claims. No, I'm saying let's assume that we do exactly what you asked, that we remove, I don't know that we can, but let's assume that we remove the cloud from the property and the cloud goes away. Okay. Have you won? Are you going home? Or do you want to still litigate about something? And if so, what do you want to litigate about? As far as just damages, I think the punitive area. So I know you want to seek punitive damages. Right. I think that's a stretch. So tell me what else you want to seek. I don't know what other remedy there would be for him except damages for whatever he might have suffered at this point. Well, those are compensatory damages. Judge Gould. Counsel, did your complaint ask for attorney's fees? I would have to look at that to double check. There may be also injunctory, I mean injunction relief or declaratory relief, depending under his state claims, and he used the state statute for that. I think Judge Perowitz's question says, assuming that our court rules in your favor on the assessments not being proper and that gives you your declaratory relief, what other issues remain in the case? Judge, do we send it back to the district court and say the rest of the case is moot, dismiss it? Or do we say we send it back for other proceedings, including X, Y, and Z? I would say that as long as there is a definitive cloud removal, that's critical. If that means leaving it open-ended and that that relief is somehow mitigated by allowing more proceedings, that would be my only concern. There may be more to litigate that he has. You were saying the excess of fines is a stretch. Whether there's some sort of damage that results or compensatory, whether there is something else in the other claims that he has standing to go back to the inception of the vagueness, I'm not sure. I'm not sure what breadth there is, but certainly the number one thing is the removal of the cloud and the potential to get some damages for what has occurred throughout this period. You know, unless you're asking me specifically, and I'm not getting it, what claims versus what remedy, is that the? You've exceeded your time, but think about this. We'll give you some time on the bottle. Claims and remedy. Let's laugh. In other words, I want to know if we were to hold, hypothetically, that the cloud should be removed, is this case over? Or do we need to tell the district judge there is more to do? And whether you relate that to, I don't know, that's what we need to know. Okay. Thank you. I will do my homework while I wait for you. Thank you. We'll give you some time, even though you've exceeded your time. Counsel. Good morning, Your Honors. My name is Richard Egger. I represent the City of San Jacinto and the County of Riverside and the individual defendants and appellees. The big picture of this case, I think, is important here. The big picture is that there were 14 notices of nuisance abatement proceedings recorded against this property when Mr. Mechamil purchased it. And those notices certainly provide under California law constructive or inquiry notice. And the question that troubles me in the case I'd like you to start off with is this. Does California law allow you to impose a lien against the property for those penalties that were incurred by the prior owner? As I read the history of the enabling statutes, five times people have gone to the legislature and gotten bills passed that would provide such authority expressly, and the governor has vetoed it every time. That suggests to me that the statutes don't currently provide cities with that authority. Could you address that issue? Well, I'll say that the, and I think that goes to the latent ambiguity argument about legislative history. Well, no, it goes to whether or not the City of San Jacinto had the authority to impose assessments against the property. We know it had authority to fine the owner. The question is, could it impose an assessment against the property, which became a lien on the property? And I'll tell you that the answer is yes. The Government Code Section 530694.4, which is the one that you talked about, that was the subject of some attempts to amend and then vetoes, I believe, does not specifically say on its face that assessments may not be used or that they may be used. The language is clear when it says, the local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agencies for those administrative fines or penalties. So the Government Code does allow. Tell me which portion you're reading now. It's A1. It's from the middle of A1. The local agency shall set forth by ordinance the administrative procedures. But isn't there a separate provision that allows these to be imposed as assessments against the property? Yes, I believe there is. And what does that one say? I'm looking at 38773.5. Right. A. As an alternative, the legislative body may by ordinance. So it's an alternative to this one. It is an alternative. May by ordinance establish a procedure for the abatement of a nuisance and make the cost of abatement of a nuisance upon a parcel a special assessment. Correct. These were fines. These were not costs of abatement, were they? Well, let me address that because that's raised, I think, in the appellant's reply brief quite a bit. San Jacinto, the Municipal Code, Section 8.44.190, which is entitled Cost of Abatement, says that the costs and incidental expenses includes but is not limited to. Then it says the actual expenses and costs of the city and the preparation. It goes on to list a few more things. And then at the end of that sentence says, and all costs or expenses to which the city may be entitled pursuant to the health and safety code and other statutory entitlements. But the statute says costs of abatement. And these are not in a normal. If I were interpreting a statute, and we're only dealing with the state statute here, your code can't define the state statute. The state statute says costs of abatement. It doesn't define costs of abatement. Do you agree? That is correct. But a fine on somebody is really not a cost of abatement, is it? Well, it's consistent. It's part of the abatement proceeding. It is not, you're correct, a direct cost of actually doing something to the property to fix the abatement. But it is a part of the process of abatement that the fine itself is intended to encourage compliance with the nuisance abatement. Let's assume you have a nuisance that it would take $10,000 to abate. It's bed plumbing. Can you fine the owner of the building $10,000 a day for two years and say that those combined fines are costs of abatement? I think that you could, whether $10,000 a day is probably a. . . But you're not really contending that there. . . What's the total assessment against this property? Before interest, it is less than $1 million, but it approaches $1 million. Okay. You're not contending that it would take $1 million to abate this nuisance? No, Your Honor. It no longer exists, does it? That's correct. And the nuisance itself was the operation of an illegal marijuana dispensary. Yeah, but not by the current owner of the property. Not by the current owner, correct. Okay. So I don't understand how this $1 million is a cost of abatement that can be assessed against the property, and with interest. I would say that under the government code section, which I first cited, 530694.4, and the government code section that the Court just referred to, the provision is allowed for the local agency to set aside the administrative procedures that govern the imposition, et cetera. So you think the administrative procedures that govern it allow you to impose a tax lien against the property for violation of an ordinance? We do. It is the city's position that the state statute does enable the city to determine what those costs are under the city's administrative procedure. Now, I'm saying you can determine what the costs are. My question is may you impose them as an assessment or lien against the property? Nobody in this case, as far as I understand it, is challenging the fines that were imposed or the costs that were imposed against the prior owner of the property. And certainly I'm not sure he'd have standing to do that. The question is whether or not they may be, whether they run with the land, if you will. Yes, and I think that the state statute that the Court referred to, which allows for assessment of costs of nuisance abatement, while it does not specifically include fines or penalties as part of those costs, I do believe that they should. So the other statute really doesn't do anything for me. It has to be this statute that justifies your lien, right? I think both statutes can justify it, but it is primarily on the one you just described. So now my question goes back to this flurry of legislative history. People have been trying to amend this statute for a long time and failing, and the governor keeps saying, I'm not going to let you amend it because I don't want that to happen. So now you're asking us to say, well, those, all those efforts have been silly because it's already there. Yes, exactly. Why? Isn't that sort of counterintuitive? Sometimes the legislature takes efforts like that for a variety of reasons. Sometimes it may be to clarify existing law. Sometimes it may be to make sure that there is no concern, but the governor's veto itself, I don't believe, provides any interpretation. But how about the bills? When you look at the legislative history of the bills, and they were passed by the legislature, the proponents keep saying, well, it's not clear that we have authority to do this and we'd like it to be expressed. Cities like yours have gone to the legislature and said, we'd really like to do what the city of January sentence doing. They're not saying that in those many words. And we're not sure the statute authorizes that. And so please pass a statute that makes it clear that we can. And the governor keeps saying, I don't want that statute. I would say that the statute itself doesn't preclude it. And the legislative history that does make it clear that the legislature at least believes that it should and does say that is what the court should rely on rather than a particular. Legislative history suggests that. I cannot say that this term abate costs of abatement here includes fines and penalties. I can't cite to a specific section of the legislative history this morning. Your Honor. I want to give you a chance to move on to other issues if you want to. But I have one, the same question I had for your opponent. Let's assume you don't prevail on the statutory side. And we find that the statute just doesn't authorize these, these types of assessments. Is there anything left in this case? And if so, what is it? I don't think that there is much left in this case. I would say that in terms of thinking about what the order from this court would read, I think that it would have to be remanded to the district court for proceedings consistent with this court's determination that the assessments were improper. But whether there's much left, I don't think there is much left at that stage. Okay. He claimed compensatory damages. He claimed punitive damages. He claimed attorney's fees. And he had several theories. One is a procedural due process, which we've talked about. He's also got takings and substantive due process. Eighth Amendment may have been thrown in too late. I don't remember. But the district judge dismissed the takings and the substantive due process. Wouldn't we have to decide whether he dismissed them properly or not? The court, based on the appeal that's been filed, yes. The court would have to determine whether he dismissed those improperly or not. That is part of the appeal, although to the extent that the court finds that the assessments were improperly imposed, the relief requested other than the attorney's fees and potentially damages that go with that are, I think that they are removed other than the attorney's fees. Can I ask you a question about procedure, the question I began with your colleague on? Am I correct in thinking that when you, when the city council does the assessment, authorizes the special assessment, it doesn't become a lien against the property at that point, but only after the taxes are not paid? As I understand it, once the assessment happens, the assessment is sent to the taxing authority. And at that point, it essentially becomes, it takes on the status of a lien. Or does it just take on the status of an unpaid tax? So, for example, I have six months of taxes that are owed to the city. I get a bill that says you have to pay them on January 1st. If I don't pay them, then they can become a lien against my property. But if I do pay them on that date, the fact that they may, there's no lien until the taxes aren't paid. Is that correct? As I understand state procedure, I think that's correct. I'm just trying to figure out when a cloud is put on the property of the special assessment as opposed to where the city may be proceeding through a mechanism to put a cloud on the property. The question is when does the cloud actually arise? To the extent that it arises as a cloud in the form of the lien, I think it does arise when the failure of the taxes happens. But under state law, the assessment on the secured rolls has the effect of a lien. In other words, it's a super priority type of. So does the assessment, so is the lien then imposed at the time that you do the assessment as opposed to the time when the taxpayer fails to pay the assessment? I believe it is, actually, Your Honor. Okay. So then how could he protest it? I had thought that it was, you know, he had a chance in his property tax bill to protest it. But if you're saying that the lien is on even before the property tax bill arrives, how is he supposed to protest it? Well, my understanding of state property tax law is that when an assessment happens, when the tax bill is issued, if you will, then the taxpayer, the owner, always has the opportunity to undertake to challenge that assessment. But he might have had a lien on his property. The bill comes every six months, right? And under your view, he might have had a lien on his property for a whole six months before he has a chance to attack it. I may have misunderstood the Court's question, and it's because of the confusion that I have about the fact that there is a term assessment, there is a term lien. In effect, they mean almost the same thing in practicality. But you're correct that the assessment process, the assessment of an imposition of a tax or assessment against a piece of real property, always has the opportunity for the taxpayer or owner of that real property to challenge it. And that would go along at the same time with the assessment when it goes on to the property tax bill. It's just an unpaid debt until the property tax bill goes out and the guy fails to pay it. Yes. Can I ask another question about these procedures? If somebody appropriately challenged an assessment and their basis for challenging it is the law under which I was charged is void, is there any administrative agency that can do anything with that argument? Well, I believe that the original time that the citation is issued begins one period of time when that can be challenged. No, but I'm asking you, okay, you make that challenge. Is it futile? I mean, can any administrative agency in this system, whether it's city or county, say San Jacinto's ordinance is void? Well, you can go up the chain and you can first challenge at the city level, but then you also have the remedy under California law to be able to file a writ of mandate. And when you talk about the assessment procedure that we were just discussing, I believe that in that process you could challenge. Okay, so you would challenge the assessment, and then if you didn't succeed you would file a state court suit for a writ of mandate. Yes, I believe that's correct. And I believe there's also a potential writ of mandate that you could file if you challenged the citation originally, the imposition of the fine, and then the subsequent assessment you could also file a writ proceeding stemming from that process. So he did file a state court suit, which was removed, and you didn't say he failed to exhaust his administrative remedies, did you? Well, I believe we did. I think we said he failed to exhaust his administrative remedies and he failed to exhaust his judicial remedies, which are the writ remedies. Well, but you don't have to exhaust judicial remedies to bring a 1983 suit, do you? Correct. And maybe you don't have to with administrative remedies either, but what administrative remedy didn't he exhaust? Well, first off, and this goes to the district judge's analysis, I think, when he purchased the property there was perhaps a 15-day window, which an original recipient of a citation would have had to challenge the citation. He didn't do that. Yeah, the judge seems to have in a sort of a nice fashion said, well, there's got to be some way to do it, so let me think of one. That's not really clear that that exists, is it? Yeah, there's no ordinance that says you have 15 days after you get the property to do this. That's correct. But to the extent that there was something he could do, he could have done that. He didn't. Well, let's assume that it didn't exist. Is there any other remedy he would have had? Yes. He did have the opportunity and did in fact request a hearing from the city, which was not provided. He could have at that time filed a writ proceedings in state court. Well, but a writ is a judicial proceeding, so I'm still trying to figure out what administrative proceeding was available. And to Mr. Mechemil, I hope I say his name correctly, what administrative proceeding was available to him that he didn't take advantage of? I think the two of them are, and they're also in part based on his predecessor's failure to act. Yeah, but I'm not worried about his predecessor. Whatever opportunity he could have taken in that 15 days after he acquired the property to save the city, I want to contest these citations and the process we've been talking about, the assessment and challenging the assessment itself. Those are the administrative opportunities. Okay. Okay. Other questions for counsel? We thank you. No, no questions. Why don't we give you a couple minutes? Thank you, Your Honor. Why don't we give you a couple minutes for rebuttal? Hello again. As far as your question about claims versus remedies, I spoke to trial counsel for Mr. Mechemil. That's why I didn't want to just give something away in my answer that wasn't correct. And he has reported that what would be good for them and appropriate would be simply removing the cloud and attorney's fees, if that answers your question. So you seek nothing further than that? No. Okay. So that would, in effect, moot all your other claims. We would simply say to the trial court, if we ruled in your favor, the cloud ought to go away and you ought to consider whether or not attorney's fees are available. That's correct. Okay. And I know you were asking, again, from the beginning as well as the city, about notice. Again, as far as trying to find what the clock is, you were correct in saying the district judge found based on when the property transferred. The city did say there were tribal issues as to whether Mr. Faor or Mr. Mechemil got notice of the first assessment. I just want to note that. And then in the same breath said they are waived by not showing up within 15 days of that first assessment. And also talking about Mr. Mechemil not having standing to challenge that first assessment. So there really is not a mechanism that I'm aware of that they brought forward other than the inquiry notice to try to clock it at a later time on how to challenge these, if that's useful to you. Okay. Anything further? I think I just want to just, you may already have this briefing, but just cut me off if it's not. Well, actually, I want to know what would be the basis for the attorney's fees? Is this a statutory basis? Is it? What kind of basis? Just tell me what you think the basis is for the attorney's fees. Well, I do know that there is a basis within 1983 as far as it being removed and as far as what the other basis might be for the state supplemental. Is there any state statute that provides for attorney's fees under this? I would have to check with that because that has been parceled out or divided here. If you want supplemental briefing, we can certainly provide that. Okay. Unless anybody has further questions, thank counsel for your arguments in your briefing, and we will be in recess. Thank you very much. All rise.
judges: Gould, Hurwitz, Restani